IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| HAWAII AIRBOARDS, LLC, a Hawaii Limited Liability Company, | ) ) ) | CIVIL NO. 11-00651 SOM-BMK |
| | ) | ORDER GRANTING DEFENDANT'S |
| | ) | RENEWED MOTION TO DISMISS FOR |
| Plaintiff, | ) | LACK OF PERSONAL JURISDICTION |
| | ) | |
| vs. | ) | |
| | ) | |
| NORTHWEST RIVER SUPPLIES, INC., d/b/a/ NRS, an Idaho Corporation, | ) ) ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**ORDER GRANTING DEFENDANT'S RENEWED**
**MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

I.        INTRODUCTION.

         Defendant Northwest River Supplies, Inc. ("NRS"), seeks
to dismiss this action on the ground that this court lacks
personal jurisdiction.  Plaintiff Hawaii Airboards, LLC ("Hawaii
Airboards"), claims that NRS is infringing on Hawaii Airboards's
patent for an inflatable water craft by selling an inflatable
stand-up paddleboard called the "Big Earl."  NRS is an Idaho
Corporation not licensed to do business in Hawaii and with
neither officers nor employees in Hawaii.  Because Hawaii
Airboards fails to show that NRS has the minimum contacts with
Hawaii necessary for this court to exercise personal jurisdiction
over NRS, the court grants NRS's motion.

II.     **BACKGROUND.**

Hawaii Airboards alleges that NRS is infringing on its patent for its "Inflatable Transportable Water Craft for Survival or Other Recreational Purposes."  First Am. Compl. for Patent Infringement ¶ 7, Dec. 22, 2011, ECF No. 7.  NRS makes and sells, among other things, inflatable stand-up paddleboards ("SUP boards") to customers throughout the United States, including Hawaii.  Id. ¶ 8.  Hawaii Airboards alleges that, by making, offering for sale, selling, and distributing one model of such boards, the "NRS Big Earl SUP Board," NRS is infringing on its patent.  Id. ¶ 11.

NRS is an Idaho Corporation, with its principal place of business in Moscow, Idaho.  Id. ¶ 2.  It sells products used in river rafting and paddlesport activities such as whitewater kayaking and canoeing.  See Decl. of Anthony Mangini ("Mangini Decl.") ¶ 5, ECF No. 37-1.  NRS markets it products, including the Big Earl, as appropriate for activities in cold water, such as rivers and lakes in the northwest United States.  Id. ¶ 18.  NRS says that the Big Earl and its other inflatable boards are well suited for use in rivers and lakes because they are easily transportable, but not for ocean wave surfing because they lack certain performance features such as stability, maneuverability, and speed.  Id. ¶ 19.

NRS SUP boards may be purchased in various athletic equipment shops or through dealers located throughout the country.  <u>Id.</u> ¶ 23.  NRS's website lists shops, including three in Hawaii, that sell its products, although the shops are not owned by NRS.  <u>Id.</u>  Customers may also purchase items directly on NRS's website.  <u>Id.</u> ¶ 28.

NRS moved to dismiss this action for lack of personal jurisdiction.  <u>See</u> ECF No. 11.  Hawaii Airboards moved for leave to conduct jurisdictional discovery, <u>see</u> ECF No. 18, and that motion was granted by Magistrate Judge Barry Kurren on March 8, 2012, <u>see</u> ECF Nos. 29, 35.  NRS and Hawaii Airboards stipulated to the withdrawal of NRS's dismissal motion pending discovery. After conducting discovery, NRS renewed its motion to dismiss for lack of personal jurisdiction, and it is the renewed motion that is now before the court.  <u>See</u> ECF No. 37.  This court held a hearing on the present motion on August 6, 2012.

**III.     LEGAL STANDARD.**

Rule 12(b)(2) of the Federal Rules of Civil Procedure permits a defendant to move for dismissal for lack of personal jurisdiction.  In patent infringement litigation, this court applies the law from the United States Court of Appeals for the Federal Circuit in determining whether this court has personal jurisdiction over an out-of-state defendant.  <u>Nuance Commc'ns, Inc. v. Abbyy Software House</u>, 626 F.3d 1222, 1230 (Fed. Cir.

2010); <u>Avocent Huntsville Corp. v. Aten Intern. Co., Ltd.</u>, 552
F.3d 1324, 1328 (Fed. Cir. 2008).

When no jurisdictional discovery has been conducted, a
plaintiff need only make a prima facie showing of jurisdiction,
and this court must resolve factual disputes in the plaintiff's
favor. <u>Nuance Commc'ns</u>, 626 F.3d at 1231; <u>Trintec Indus., Inc.
v. Pedre Promotional Prods., Inc</u>., 395 F.3d 1275, 1282 (Fed. Cir.
2005). In this case, the parties have already conducted
jurisdictional discovery and presented evidence to this court in
that regard, and the court relies on that evidence in making its
decision.

## IV.      ANALYSIS.

"Determining whether personal jurisdiction exists over
an out-of-state defendant involves two inquiries: whether a forum
state's long-arm statute permits service of process, and whether
the assertion of personal jurisdiction would violate due
process." <u>Avocent Huntsville Corp.</u>, 552 F.3d at 1329 (quoting
<u>Inamed Corp. v. Kuzmak</u>, 249 F.3d 1356, 1359 (Fed. Cir. 2001)).
Because Hawaii's long-arm statute is co-extensive with federal
due process requirements, the jurisdictional analyses under
Hawaii law and federal law merge into one analysis. <u>See</u> <u>Nuance
Commc'ns</u>, 626 F.3d at 1230; <u>Roth v. Garcia Marquez</u>, 942 F.2d 617,
620 (9th Cir. 1991); <u>Cowen v. First Ins. Co. of Haw.</u>, 61 Haw.
644, 649, 608 P.2d 394, 399 (Haw. 1980) ("Hawaii's long-arm

statute, [Haw. Rev. Stat.] § 634-35, was adopted to expand the jurisdiction of Hawaii's courts to the extent permitted by the due process clause of the Fourteenth Amendment.").

The Due Process Clause of the United States Constitution protects a defendant's "liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471-72 (1985) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 319 (1945)). "The constitutional touchstone for determining whether an exercise of personal jurisdiction comports with due process 'remains whether the defendant purposefully established 'minimum contacts' in the forum State.'" Nuance Commc'ns, 626 F.3d at 1230-31 (quoting Burger King Corp., 471 U.S. 462, 474 (1985)). "[T]he burden of proof is on the plaintiff to establish 'minimum contacts.'" Inamed Corp., 249 F.3d at 1360.

To have the required minimum contacts, NRS must have acted and had a connection with Hawaii in a manner that should have led it to "reasonably anticipate being haled into court" in Hawaii. See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). Requiring "minimum contacts" performs two functions. "It protects the defendant against the burdens of litigating in a distant or inconvenient forum. And it acts to ensure that the States[,] through their courts, do not reach out

beyond the limits imposed on them by their status as coequal sovereigns in a federal system." Id. at 292.

In determining whether a defendant has the requisite minimum contacts, courts have created two jurisdictional concepts--general and specific jurisdiction. Hawaii Airboards fails to establish that this court has either type of jurisdiction over NRS.

**A. General Jurisdiction.**

A court may exercise general jurisdiction when "the defendant has continuous and systematic contacts . . . with the forum state, even if those contacts are not related to the cause of action." Elecs. for Imaging, Inc. v. Coyle, 340 F.3d 1344, 1349 (Fed. Cir. 2003) (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984)). The defendant's contacts must be "so 'continuous and systematic' as to render them essentially at home in the form State." Goodyear Dunlop Tires Operations, S.A. v. Brown, __ U.S. __, 131 S. Ct. 2846, 2851 (2011) (citing Int'l Shoe, 326 U.S. at 317).

The Supreme Court has referred to Perkins v. Benguet Consol. Mining Co., 342 U.S. 437 (1952), as "the textbook case of general jurisdiction appropriately exercised over a foreign corporation." Goodyear, 131 S. Ct. at 2856 (quoting Donahue v. Far Eastern Air Transp. Corp., 652 F.2d 1032, 1037 (D.C. Cir. 1981)). The defendant in issue in Perkins was a Philippine

corporation that had ceased activities in the Philippines during
World War II. 342 U.S. at 447. During that time, it conducted
its business in Ohio. The corporation's president (who was also
its general manager and principal stockholder) maintained a
corporate office in Ohio where he kept business files, handled
corporate correspondence, drew and distributed salary checks on
behalf of the company, held directors' meeting, and supervised
the corporation's limited wartime activities. Id. at 448. The
corporation's president also maintained active bank accounts in
Ohio with substantial balances of company funds from which he
drew employees' salaries. Id.

     By contrast, the Supreme Court concluded that a Texas
court did not have personal jurisdiction over an out-of-state
corporation in Helicopteros Nacionales de Colombia, S.A. v. Hall,
466 U.S. 408 (1984). The defendant, a Colombian corporation, had
no place of business in Texas and was not licensed to do business
there, but it had sent its CEO to Texas to negotiate a contract;
accepted into its New York bank account checks drawn on a Houston
bank; purchased 80% of its helicopter fleet, spare parts, and
accessories from a Texas company; and sent pilots to Texas for
training and management for consultation. 466 U.S. at 416-418.
Those links "did not 'constitute the kind of continuous and
systematic general business contacts . . . found to exist in

Perkins.'" Goodyear, 131 S. Ct. at 2856 (citing Helicopteros, 466 U.S. at 415-16).

"Neither the United States Supreme Court nor [the Federal Circuit] has outlined a specific test to follow when analyzing whether a defendant's activities within a forum are 'continuous and systematic.'" Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. De Equip. Medico, 563 F.3d 1285, 1297 (Fed. Cir. 2009) (quoting LSI Indus. Inc. v. Hubbell Lighting, Inc., 232 F.3d 1369, 1375 (Fed. Cir. 2000)). However, "sporadic and insubstantial contacts" are insufficient. See Campbell Pet Co. v. Miale, 542 F.3d 879, 884 (Fed. Cir. 2008).

The Federal Circuit has found "continuous and systematic contacts" when a defendant company had millions of dollars of sales over the preceding several years, a broad distribution network in the forum state, and a national sales force that included agents in the forum state. LSI Indus., 232 F.3d at 1375; LSI Indus., Inc. v. Hubbell Lighting, Inc., 64 F. Supp. 2d 705, 706 (S.D. Ohio 1999), rev'd, 232 F.3d at 1369. The company did not dispute that it had conducted a "significant amount of business" in the forum state. LSI Indus., 64 F. Supp. 2d at 706.

On the other hand, the Federal Circuit has concluded that a defendant did not have "continuous and systematic contacts" in California when the company was not registered to do

business there and had no facilities, assets, employees, or agents there, even though the company had sent representatives to California to negotiate a business agreement, entered into agreements with about ten California companies, collaborated with a California company, attended three conferences or trade shows in California, made 20 sales to a California company for $7,600 (which amounted to 1% of the company's sales that year), and published an "application note" on the globally accessible website of <u>Nature</u> magazine. <u>Autogenomics, Inc. v. Oxford Gene Tech. Ltd.</u>, 566 F.3d 1012, 1015-18 (Fed. Cir. 2009). The plaintiff had characterized the application note as an advertisement to California companies because the University of California was a top visitor to that website. <u>Id.</u> at 1016.

NRS's contacts with Hawaii are similarly neither continuous nor systematic enough for this court to say that it has rendered itself "at home" in Hawaii. <u>See</u> <u>Goodyear</u>, 131 S. Ct. at 2851. NRS is not licenced to do business in Hawaii. Mangini Decl. ¶¶ 9-14. It has no offices, employees, agents, or bank accounts in Hawaii. <u>Id.</u> It does not own, rent, or lease any property in Hawaii. <u>Id.</u> ¶ 12. NRS has never contracted with a Hawaii resident. <u>Id.</u> ¶ 16.

Nor does NRS market its products to Hawaii customers. <u>Id.</u> ¶ 18. Its products are designed for cold-water activities. <u>Id.</u>; Mangini Decl at Ex. 2, ECF No. 37-3. NRS has never

advertised in Hawaii specifically, and no NRS employee has traveled to Hawaii to promote NRS's products or attend trade shows.  Id. ¶ 21.  No employee has ever made sales calls directed to customers in Hawaii.  Id.  NRS does not operate any retail shops in Hawaii.[1]

Hawaii Airboards rests its argument that NRS has continuous and systematic contacts with Hawaii on (1) NRS's sales in Hawaii, (2) the accounts NRS maintains with its Hawaii dealers, (3) NRS employees' travel to Hawaii, and (4) NRS's interactive website.  Those contacts are insufficient to give rise to general jurisdiction.

With respect to NRS's Hawaii sales and accounts, in 2011 and 2012, all sales to Hawaii amounted to only one-tenth of one percent (0.01%) of NRS's total sales.  Mangini Decl. ¶ 28.  In 2010, 2011, and 2012, sales made by NRS's Hawaii dealers amounted to less than 0.01% of NRS's total dealer sales.  Id. ¶ 25.  At the hearing on this motion, Hawaii Airboards urged this court to consider the number of sales made in Hawaii and the total dollar amount of those sales, rather than the percentage of total sales.  Hawaii Airboards contended that NRS transacted between 250 and 275 sales in Hawaii in 2011, totaling about

---

[1]  At the hearing, NRS stated that NRS does not sell its goods through a network of its own retail stores.  Purchases must be made through one of its dealers, online, or at its one outlet at its headquarters in Idaho.

$45,000.  NRS did not contest those figures.  Those figures appear to include sales made through its dealers and its website.

Hawaii Airboards cites no authority establishing that either the number of transactions or the dollar amount of sales in a forum state is more significant than the percentage of NRS's total sales involving Hawaii.  The cases reviewed by this court do not indicate that any particular figure is critical.  Courts look to the totality of the circumstances rather than to individual facts.  <u>See, e.g.</u>, <u>Arlington Indus., Inc. v. Elec. Custom Distrib., Inc.</u>, 817 F. Supp. 2d 473, 478 (M.D. Pa. 2011) ("[I]n analyzing the Defendant's contacts with the forum, a district court will look to the aggregate effect of those contacts as a whole." (citing <u>Aeration Solutions, Inc. v. Dickman</u>, 85 Fed. Appx. 772, 774 (Fed. Cir. 2004))).

Although $45,000 worth of sales and 250 transactions could be significant in some circumstances, put in the context of NRS's otherwise minimal contacts with Hawaii, those sales and transactions are insufficient to confer general jurisdiction in Hawaii.

In so ruling, this court is guided by <u>Hockerson-Halberstadt, Inc. v. Costco Wholesale Corp.</u>, 2000 WL 726888, at *2 (E.D. La. June 5, 2000), <u>aff'd</u> <u>sub</u> <u>nom.</u> <u>Hockerson-Halberstadt, Inc., v. Propet USA, Inc.</u>, 62 Fed. Appx. 322 (Fed. Cir. 2003).  In that case, general jurisdiction was not

exercised over Costco, which had contact with Louisiana only through online sales totaling $32,252.32 over 18 months. Those sales constituted less than 0.0000008 of Costco's total sales during that time period.

Similarly, in <u>Stairmaster Sports/Medical Products, Inc. v. Pacific Fitness Corp.</u>, 916 F. Supp. 1049, 1053 (W. D. Wash. 1994), <u>aff'd</u>, 78 F.3d 602 (Fed. Cir. 1996), the United States District Court for the Western District of Washington, applying Ninth Circuit law, declined to exercise general jurisdiction over an out-of-state defendant that sold its products in Washington through three independent distributors and shipped its products to Washington. The products shipped to Washington constituted 3% of the company's total sales. <u>Id.</u> Employees of the company had also made isolated visits to Washington.[2] <u>Id.</u>

With respect to NRS's other contacts with Hawaii, Hawaii Airboards does not show that NRS employees traveled to Hawaii to promote NRS. Hawaii Airboards points to two employees who used a Big Earl in Maui and a photograph of an employee in Hawaii that appeared in an NRS newsletter. The record before this court indicates that the employees were on vacation in Maui, where they used the Big Earl for recreation. Supplemental Decl.

_____

[2] Even though the district court had applied Ninth Circuit law, that order was affirmed by the Federal Circuit in an unpublished decision. <u>Stairmaster Sports/Medical Prod.</u>, 78 F.3d at 602.

of Anthony Mangini ("Mangini Decl. 2") ¶¶ 10-16, ECF No. 44-1.
There is no evidence that they were promoting NRS at the time.
The employee in the newsletter was photographed by her husband
while they were on vacation.  Id. ¶ 24.  Although NRS published
the photo, the newsletter did not refer to Hawaii, and it is not
obvious that the picture was taken in Hawaii.  See Moran Decl. at
Ex. I, ECF No. 46-9.  There is no evidence that NRS sent that
employee to Hawaii to be photographed.  Mangini Decl. 2 ¶ 21.

        Nor does Hawaii Airboards establish that a planned
Hawaii photoshoot constituted an NRS contact with Hawaii.  Hawaii
Airboards relies on an email exchange between the NRS Marketing
Coordinator and a photographer discussing a possible photoshoot
in Hawaii using NRS products.  Moran Decl. at Ex. H.  That
photoshoot was not commissioned by NRS, and there is no evidence
in the record that it actually occurred.  Mangini Decl. 2 ¶ 20.

        Notably, NRS's website is not specifically directed at
customers in Hawaii.  See Campbell Pet Co., 542 F.3d at 884
(holding that the defendants' maintenance of a website was
insufficient to give rise to general jurisdiction because it was
not directed at customers in Washington and did not appear to
have generated any sales in Washington); Trintec Indus., 395 F.3d
at 1281 (holding that the defendants' website did not establish
general jurisdiction in the District of Columbia, because it was
not specifically directed at the District of Columbia, "but

instead [was] available to all customers throughout the country who [had] access to the Internet. . . . [T]he ability of District residents to access the defendants' websites . . . does not by itself show any persistent course of conduct by the defendants in the District.").

Taken together, NRS's Hawaii contacts fail to rise to the continuous and systematic contacts necessary for general jurisdiction.

### B. Specific Jurisdiction.

A court may exercise specific jurisdiction over an out-of-state defendant when that defendant has "purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities." Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found., 297 F.3d 1343, 1350-51 (Fed. Cir. 2002) (quoting Inamed Corp., 249 F.3d at 1360). "The Federal Circuit applies a three prong test to determine if specific jurisdiction exists: (1) whether the defendant purposefully directed activities at residents of the forum; (2) whether the claim arises out of or relates to those activities; and (3) whether assertion of personal jurisdiction is reasonable and fair." Nuance Commc'ns, 626 F.3d at 1231 (citing Akro Corp. v. Luker, 45 F.3d 1541, 1545-46 (Fed. Cir. 1995)).

Hawaii Airboards argues that NRS has purposefully directed promotion and sales activities of its SUP boards at residents of Hawaii, and that its infringement claim arises out of those activities. The record does not indicate that NRS has purposefully directed any activities relating to the allegedly infringing Big Earl board.

NRS maintains that it has never sold a Big Earl board in Hawaii, that it does not market that board in Hawaii, and that it has never sent a Big Earl board as a demo to any dealer or customer in Hawaii. <u>See</u> Mangini Decl. ¶¶ 26-28

NRS has, however, shipped one Big Earl board to Hawaii. One of NRS's dealers in California ordered a Big Earl board and asked NRS to ship it to Hawaii. <u>Id.</u> ¶ 27. Hawaii Airboards contends that the shipment of that board to Hawaii amounts to purposeful direction of activities to Hawaii such that NRS should have anticipated being haled into court in Hawaii. However, nothing in the record suggests that NRS sought Hawaii out as a market in connection with that shipment. The Big Earl is not sold anywhere in Hawaii, not even by the three shops that sell NRS products in Hawaii. <u>Id.</u> ¶ 23. NRS sold the board to a California dealer, and it was the dealer who requested that the board be shipped to Hawaii and who paid the shipping charges. <u>Id.</u> ¶ 27. NRS appears to have had no control over where the

customer wanted the board sent and cannot be said to have "purposefully directed" the board to a Hawaii resident.

Even though there may be circumstances in which the sale of a single allegedly infringing product in a forum state gives rise to specific jurisdiction, the delivery of a product is not necessarily equivalent to the transaction of a sale. Although delivered to Hawaii, the sale of the Big Earl in issue appears to have been transacted elsewhere. NRS agreed to sell its product to the California dealer, and the California company was billed for the product. Hawaii Airboards, which has the burden of showing that this court has personal jurisdiction over NRS, provides no authority suggesting that the point of delivery should be treated like the place of sale.

Hawaii Airboards also unpersuasively argues that NRS purposefully directed activities toward Hawaii residents when the two NRS employees who used a Big Earl while vacationing on Maui showed the board to a rental shop in Maui. As discussed above, NRS did not direct those employees to promote or test the board in Hawaii. The employees were using the board for recreation and answered questions that the rental company asked them about the board. See Mangini Decl. 2 ¶¶ 12-13.

Relying on an email written by one of the employees who used the Big Earl in Hawaii suggesting that NRS should enter the ocean rental market, Hawaii Airboards further contends that NRS

intended to sell its SUP boards, including the Big Earl, in Hawaii. <u>See</u> Moran Decl. at Ex. D. However, the record indicates that the NRS Marketing Director rejected that employee's suggestion because the ocean rental market is outside the scope of NRS's cold-water paddlesport market. Mangini Decl. 2 ¶ 15.

Similarly unpersuasive is Hawaii Airboards's contention that correspondence sent to NRS's sales employees by NRS's Marketing Director confirms that NRS had previously sold and shipped SUP boards, presumably including the Big Earl, to Hawaii. The email states: "we will no longer be able to sell or ship any NRS inflatable SUP board to the state of Hawaii." Moran Decl. at Ex. F. Hawaii Airboards interprets the email as conclusively showing that NRS previously sold and shipped SUP boards to Hawaii on numerous occasions. Even after having conducted jurisdictional discovery, Hawaii Airboards could point to no evidence supporting its reading of that email. The present record supports NRS's contention that it has not sold, shipped, or marketed any SUP boards to anyone in Hawaii, other than the Big Earl board that was sold to the California dealer who asked that the board be shipped to Hawaii. The email does not contradict NRS's position.

Finally, relying on <u>Beverly Hills Fan Company v. Royal Sovereign Corp.</u>, 21 F.3d 1558 (Fed. Cir. 1994), Hawaii Airboards contends that NRS has purposefully directed activities at Hawaii

17

residents by placing the Big Earl board in the "stream of commerce." The Supreme Court has held that personal jurisdiction over an out-of-state corporation may be appropriate when that corporation "delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State."[3] World-Wide Volkswagen, 444 U.S. at 297-98 (as quoted in Beverly Hills Fan, 21 F.3d at 1566). A majority of the Supreme Court has yet to agree on the exact requirements for the application of that theory. In J. McIntyre Machinery, Ltd. v. Nicastro, __ U.S. __, 131 S. Ct. 2780, 2788 (2011), and Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 112 (1987), the plurality stated that a company must do more than just place a product in the stream of commerce; it must purposefully direct some action toward the forum state. Action showing "purposeful direction" might include "designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." Asahi Metals, 480 U.S. at 112. The concurrence in Asahi Metals, id. at 117 (Brennan, White, Marshall, & Blackmun, JJ., concurring), viewed sufficient the placement of a product in the stream of

---

[3] The stream of commerce theory is applicable only to specific jurisdiction, not general jurisdiction. Goodyear, 131 S. Ct. at 2851.

commerce, so long as the company in issue was aware that the product was being marketed in the forum state.

The Federal Circuit has declined to state whether it requires additional conduct showing purposeful direction. See Commissariat A L'Energie Atomique v. Chi Mei Optoelectronics Corp., 395 F.3d 1315, 1322 (Fed. Cir. 2005); Beverly Hills Fan, 21 F.3d at 1566.

In Beverly Hills Fan, the Federal Circuit held that the plaintiff had made the required jurisdictional showing under either version of the stream of commerce theory:

> When viewed in the light of the allegations and the uncontroverted assertions in the affidavits, plaintiff has stated all of the necessary ingredients for an exercise of jurisdiction consonant with due process: defendants, acting in consort, placed the accused [product] in the stream of commerce, they knew the likely destination of the products, and their conduct and connections with the forum state were such that they should reasonably have anticipated being brought into court there.

Id. The defendants were alleged to have purposefully shipped and sold its products, through intermediaries, to customers in the forum state. Id. at 1563-64. Significant to the Federal Circuit was the shipping of products through an established distribution channel. Id. at 1565-66, 1565 n.15.

Hawaii Airboards argues that NRS's California dealer served as a distribution channel analogous to the intermediaries in Beverly Hills Fan. However, the shipment to Hawaii appears to

have been an isolated occurrence.  There is no evidence that the
Big Earl in issue reached the Hawaii market through an
established distribution channel.  See World-Wide Volkswagen
Corp., 444 U.S. at 297 ("[I]f the sale of a product of a
manufacturer or distributor . . . is not simply an isolated
occurrence, but arises from the efforts of the manufacturer or
distributor to serve directly or indirectly, the market for its
product in other States, it is not unreasonable to subject it to
suit in one of those States.").

On a more basic level, Hawaii Airboards does not show
that NRS knew or could have predicted that the Big Earl board in
issue was to be shipped to Hawaii.  See id. at 297-98 (requiring
that a defendant expect that the product in issue be "purchased
by" consumers in the forum state).  In Beverly Hills Fan, 21 F.3d
at 1564, the distributor, a retail store, had outlets located in
the forum state and the defendants had had an ongoing
relationship with the distributor, indicating that the defendants
in issue knew that their product would be sold in that state.  In
the present case, there is no evidence that NRS viewed the
California dealer as having locations or customers in Hawaii.  It
is not even clear from the record that the board was ever
intended to be sold in Hawaii.  The invoice for the board and an
email exchange between the California dealer and an NRS account
manager suggest that the board was shipped to an employee or

owner of the California dealer, in care of another individual.
<u>See</u> Moran Decl. at Ex. B; Decl. of Duncan Palmatier at Ex. 1, ECF
No. 48.  Thus, it is possible the board was shipped for personal
use.

In addition, to the extent the Federal Circuit requires
some conduct showing purposeful direction in addition to the
placing of a product in the stream of commerce, Hawaii Airboards
fails to provide evidence of such conduct.  As discussed above,
there is no evidence that NRS purposefully directed any activity
related to the Big Earl board toward residents in Hawaii.

Hawaii Airboards fails to show that this court has
specific jurisdiction over NRS.

## V.        CONCLUSION.

Because Hawaii Airboards has not met its burden of
showing that NRS has the minimum contacts with Hawaii necessary
for this court to exercise personal jurisdiction over NRS, the
court grants NRS's motion to dismiss for lack of personal
jurisdiction.

The Clerk of Court is directed to enter judgment for
NRS and to close the case file.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, August 9, 2012.



 /s/ Susan Oki Mollway 
Susan Oki Mollway
Chief United States District Judge

Hawaii Airboards, LLC, v. Northwest River Supplies, Inc.; Civil No. 11-00272 SOM/BMK;
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION.

22